**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GAYLA A. GASKIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-91-R** |
| | ) | |
| **SCIENCE APPLICATIONS** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before this Court is Defendant Science Applications International, Inc.'s ("Defendant" or "SAIC") Motion for Summary Judgment (Doc. 23). Plaintiff has responded (Doc. 24); Defendant has replied (Doc. 25); and the matter is fully briefed and at issue. For the reasons stated herein, the Court GRANTS Defendant's Motion.

## I.    Background

The Court views the factual record and all reasonable inferences drawn from it in the light most favorable to Plaintiff, the non-movant. *See Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1325 (10th Cir. 2019).

Defendant contracts with the Federal Aviation Administration ("FAA") to train air traffic controller candidates at the FAA Academy in Oklahoma City, Oklahoma. Doc. 23, at 5. Beginning on September 9, 2015, Plaintiff began working for Defendant as an Instructor II at the FAA Academy. Doc. 13, at 2; Doc. 23, at 6. To hold an Instructor II position, one must be certified by the FAA. Doc. 23, at 6; *see also* Doc. 23-2, at 4; Doc.

23-3, at 4 ("Personnel in these [Instructor II] positions require FAA certification."). Moreover, as terms of their employment, Instructor IIs were required to comply with the SAIC Code of Conduct, the SAIC Workplace Behavior policy, the FAA Academy Lab Rules, and the FAA Guidance on Maintaining Professional Relationships. Doc. 23, at 6. These various guidance documents prohibit employees from fraternizing or behaving inappropriately with or around students. *See id.* at 6–8; *see also* Doc. 23-5, at 12 (outlining harassment policy and noting that "[h]arassment . . . will not be tolerated"); Doc. 23-6, at 2, 4 (defining "Prohibited Conduct" and stating that, "[i]f SAIC determines that an employee has engaged in Prohibited Conduct . . . appropriate disciplinary action will be taken . . . including termination"); Doc. 23-7, at 1 (barring "All Academy Controller Training Contract 'CTC' employees" from fraternizing with students); Doc. 23-8 (FAA guidance document further explicating bar on instructor-student fraternization).

Beginning in 2016, Plaintiff began receiving warnings about misconduct. On February 17, 2016, Plaintiff received a letter from her supervisor detailing "four specific comments" submitted in end-of-course reviews from students Plaintiff instructed. Doc. 23, at 8; Doc. 23-2, at 7–8; Doc. 23-9. According to Plaintiff's supervisor, these students complained that Plaintiff distracted them during their lab work. *See* Doc. 23-9. Plaintiff denied the accusations, but she was instructed to change her behavior and act in a more professional manner. *Id*.

On March 2, 2016, Plaintiff was counseled by Dan Morgan, her supervisor, in relation to another anonymous end-of-year critique from one of her students, who accused her of criticizing the assigned curriculum. Doc. 23, at 8; Doc. 23-2 at 8–9; Doc. 23-10;

Doc. 23-11. During the counseling, Plaintiff was asked to "[d]ispense with . . . unacceptable lab conduct" and told that "[f]uture occurrences of this type could lead to a determination of unsuitability for employment with SAIC-CTC." Doc. 23-10, at 2.

On March 15, 2016, Plaintiff received a warning memorandum from Mr. Morgan "outlin[ing] the performance that is required from . . . a[n] SAIC-CTC Tower Instructor." Doc. 23-12, at 1; *see also* Doc. 23-2, at 10. Plaintiff was told she was not meeting the requirements of her position—specifically, because she "ma[de] disparaging remarks concerning the courseware and customer required practices"; "engag[ed] in non-course related dialogue with students during labs"; and did "not remain[] professional, concise, and non-distracting in all situations." Doc. 23-12, at 1. The memorandum detailed ways in which Plaintiff was expected to improve her conduct and conform to SAIC and FAA guidelines. *Id*. at 2. The memorandum also informed Plaintiff that failure to improve her conduct "may result in disciplinary action . . . including termination . . . ." *Id*.

The alleged misconduct resulting in Plaintiff's termination occurred in late 2016 in one of Plaintiff's courses. Plaintiff taught eighteen students in Class 102897 from December 8, 2016, to February 1, 2017. Doc. 23, at 8. On January 30, 2017, Mr. Morgan received an email from FAA Section Manager Andy Taylor, in which Mr. Taylor requested that Mr. Morgan speak to Plaintiff about allegations made by her students in their end-of-course critiques. *Id*. at 9; Doc. 23-14, at 1–2. Among the student comments were the following:

- "[Plaintiff] hit on my classmates a lot."

- "[Plaintiff] was very inappropriate as an instructor. She made me feel pretty uncomfortable at times."

- "[Plaintiff] . . . made a lot of noises into the headset that made me miss a number of call signs."

- "I even had [Plaintiff] talk through my entire skill check to another instructor about how bad I was doing in my run. That whole run was ruined for me because she was talking into the headset."

Doc. 23-14, at 1–2. Mr. Taylor expressed concern about Plaintiff's job performance and concluded that Plaintiff's alleged misconduct did not seem to be "an isolated issue" given that multiple students complained. *Id*. at 2. Mr. Morgan reached out to Plaintiff following the email, requesting that she respond to the allegations, providing her with a copy of the email, and sending her home on paid leave pending an investigation. Doc. 23, at 9; Doc. 23-2, at 13. On February 1, 2017, Plaintiff submitted a letter from her attorney denying any wrongdoing. Doc. 23, at 10; Doc. 23-2, at 13–14; Doc. 24-2.

Following the student comments, the FAA conducted its own investigation. Doc. 23, at 10. Two students' comments stood out from the FAA's inquiry. First, Leighton Smith complained that Plaintiff touched him inappropriately and made him uncomfortable. *Id*.; *see also* Doc. 23-15. Specifically, Smith accused Plaintiff of the following:

- Plaintiff touched him "on the shoulders or upper arm" during lab work;

- Plaintiff told him, "I'd like to ride you like a rented mule" in the presence of other students;

- Plaintiff shook his hand in a way that made him uncomfortable; and

- Plaintiff told him that he "reminded her of a policeman that she had formerly dated."

*Id*. Second, Adam Jaworski complained of similar conduct, alleging that Plaintiff (1) inquired about his personal life and shared details of her personal life, (2) showed him personal pictures on her phone and told him he "need[ed] to come over to [her] house in Yukon and hang out with [her] and [her] dogs, and (3) repeatedly grabbed his arm. *Id*. Jaworski also claimed that Plaintiff stopped speaking to him after she accused him of getting her in trouble. Doc. 23-15, at 2. Finally, Jaworski corroborated Smith's account. *Id*. ("[Jaworski] did state that [Plaintiff] 'ma[de] advances toward Leighton [Smith] and said inappropriate things.'").[1]

Having investigated these student comments, the FAA notified SAIC on February 3, 2017, that it was decertifying Plaintiff as an Academy Instructor in light of her "inappropriate behavior." *See* Doc. 23, at 11–12; Doc. 23-4. On February 6, 2017, SAIC terminated Plaintiff's employment because she "violat[ed] . . . SAIC's Code of Conduct." Doc. 23-16; *see also* Doc. 23, at 12.

## II.    Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."

---

[1] The FAA also solicited comments from other students during its investigation, and it forwarded these comments to SAIC. *See* Doc. 23-4 (FAA summary of student statements featuring accusations similar to those made by Smith and Jaworski).

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). In short, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

While the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–13 (10th Cir. 2014), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III.  <u>Discussion</u>

Plaintiff asserts one count of sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. "To survive summary judgment on a Title VII

claim," Plaintiff must present either direct or indirect evidence of discrimination. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). "When a plaintiff relies on circumstantial evidence to prove employment discrimination, [the Court] appl[ies] the three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973)).[2] Under the *McDonnell Douglas* framework, Plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted). Plaintiff may establish a *prima facie* case of wrongful, sex-based termination by showing that "(1) [she] was a member of a protected class (2) who was terminated (3) despite being qualified for her position, and (4) [her] job wasn't eliminated." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 884 (10th Cir. 2018).

Plaintiff's *prima facie* burden is "*de minimis*"—she must merely produce, not persuade. *See Plotke*, 405 F.3d at 1099, 1101. Accordingly, "the elements of a prima facie case are neither rigid nor mechanistic." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (internal quotation marks and citation omitted). Rather, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54

---

[2] The parties agree that the *McDonnell Douglas* framework applies here. *See* Doc. 24, at 19.

(1981)); *see also Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978) ("*McDonnell Douglas* . . . ma[de] clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under [Title VII]." (internal quotation marks and citation omitted)).

"Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee," *Burdine*, 450 U.S. at 254, thereby shifting the burden onto Defendant to rebut the presumption "by producing evidence the termination was based on a legitimate, nondiscriminatory reason." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). Defendant bears only a burden of production, not persuasion. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000); *see also E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) ("The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.").

If Defendant meets its burden, then "summary judgment is warranted unless [Plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons [for her termination] are pretextual." *Plotke*, 405 F.3d at 1099. Evidence of pretext is considered in its totality. *Fassbender*, 890 F.3d at 884. Plaintiff "may establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Bennett*, 792 F.3d at 1267 (internal quotation marks and citation omitted). "Plaintiff has the ultimate burden of proving . . . that [D]efendant intentionally discriminated against [her]." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Burdine,* 450 U.S. at 260).

Here, Defendant is entitled to summary judgment for two reasons: (1) Plaintiff cannot establish a *prima facie* case of sex discrimination, and (2) even if she could, Plaintiff fails to show Defendant's non-discriminatory rationale for her termination is pretextual.

**(A)** **_Prima Facie_ Case**

Plaintiff meets the first two elements of a *prima facie* case for sex discrimination— she is a woman (member of a protected class) who Defendant terminated (suffered an adverse employment action). Defendant does not seriously contest this. Rather, Defendant strenuously asserts that Plaintiff cannot meet the third element of her *prima facie* case— that she was qualified for her position. *See* Doc. 23, at 16–18; Doc. 25, at 4–5. Specifically, Defendant argues that the FAA's decertification of Plaintiff on February 3, 2017, stripped her of qualifications necessary for her position. *See* Doc. 23, at 17–18; Doc. 23-4 (FAA email notifying SAIC that FAA was decertifying Plaintiff as an Academy Instructor "[a]fter conducting interviews with numerous students"). Because Plaintiff lacked the FAA certification required for her position, says Defendant, she was unqualified at the time of her termination and, therefore, cannot make out a *prima facie* case of sex discrimination.

Plaintiff admits that she needed FAA certification to hold her Instructor position and that decertification would render her ineligible to serve in that position. *See* Doc. 23-2, at 4–5, 16, 24.[3] Courts have found plaintiffs who (before termination) lost an objective qualification or certification required for their position unable to establish *prima facie* cases of discriminatory discharge. *See Liles v. N.Y.C Dep't of Educ.*, 516 F. Supp. 2d 297 (S.D.N.Y. 2007) (granting summary judgment to employer-defendant where plaintiff failed to make out a *prima facie* case of discriminatory discharge because he lost a United States Army certification necessary for his instructor position before termination); *Bynum*

---

[3] In her deposition, Plaintiff testified that her initial hiring was contingent on the FAA's approval:

> Q [defense counsel]. It looks like your employment w[as] contingent on the FAA as the customer approving your qualifications to support the FAA contract that SAIC had; is that right?
> A [Plaintiff]. Yes.
> Q. So if the FAA had said, we don't approve you hiring Ms. Gaskin [Plaintiff], you wouldn't have been able to be hired?
> A. No.

Doc. 23-2, at 4. Plaintiff also acknowledged that her position, Academy Instructor, required FAA certification:

> Q. [The SAIC contract with the FAA] indicates [Plaintiff's position, Instructor Two Academy Terminal] requires FAA certification . . .?
> A. Yes.
> Q. Okay. And you were aware of that requirement?
> A. Yes.

*Id*. Plaintiff was also aware of the consequences of decertification:

> Q. And how . . . can you lose that FAA certification?
> A. Any inappropriate actions, any fraternization with students. And anytime the FAA says we don't want her working with students, or him.
> Q. If somebody did get decertified as an instructor, what would that mean? Would they be able to continue teaching?
> A. No.

*Id*. at 5; Plaintiff also admitted in her deposition that (1) she knew she could not continue in her SAIC instructor position once the FAA decertified her—regardless of whether the students' complaints lodged against her were true and (2) SAIC had no position for her without FAA certification. *See id*. at 16, 24.

*v. Fort Worth Indep. School Dist*, 41 F. Supp. 2d 641 (N.D. Tex. 1999) (same).[4] But Plaintiff argues that her decertification is irrelevant to whether she can make out a *prima facie* case of sex discrimination; rather, she can establish the third element of a *prima facie* case—that she was qualified for her position—through the length of her employment with Defendant alone. *See* Doc. 24, at 22.

---

[4] The parties each cite *Bynum*, arguing over whether it is applicable here. *Bynum* involved a plaintiff who brought a Title VII claim for religious discrimination against his former employer. *See Bynum*, 41 F. Supp. 2d at 643, 652. The plaintiff was certified by the Department of the United States Army to work as a Junior Reserve Officers' Training Corps ("JROTC") instructor. *Id*. at 645. Such Army certification was required for JROTC instructors. *Id*. at 643, 646. Following a period of policy violations and misconduct, the United States Army withdrew the plaintiff's certification, and the plaintiff was terminated by his employer a little over a month later. *Id*. at 647–52. The *Bynum* plaintiff claimed he was fired because of his religion—he was a Seventh Day Adventist—but the federal district court granted summary judgment to the defendant because the plaintiff could not make out a *prima facie* case of Title VII religious discrimination. *Id*. at 653. In the district court's eyes, "[t]erminating [the plaintiff's] employment was the only viable option [the defendant] had once [the plaintiff] was decertified." *Id*. (citing *Washington v. Kirksey*, 811 F.2d 561, 564 (11th Cir. 1987)). "[B]ecause there [was] no evidence that [the plaintiff] was terminated because of his failure to comply with an employment requirement that conflicted with any of [his] religious beliefs," the defendant was entitled to summary judgment. *Id.*

Plaintiff attacks Defendant's reliance on *Bynum*, arguing that because *Bynum*'s enunciation of the elements of a religious discrimination claim does not perfectly engraft onto the elements of a sex discrimination claim (as delineated in Plaintiff's brief and in this order), *Bynum* is inapposite. *See* Doc. 24, at 22 ("*Bynum* is a religious discrimination case, which has completely different elements necessary to establish a prima facie case of religious discrimination. . . . None of these . . . elements are applicable to the elements [Plaintiff] must establish for sex discrimination."). Plaintiff's insistence on a rigid conceptualization of the necessary *prima facie* showing is in tension with her assertion—mere pages earlier in her response brief—that the *prima facie* case is "not intended to be inflexible . . . [or] onerous." *Id*. at 19, 22. More to the point, claims of discriminatory discharge brought pursuant to Title VII are subject to the same *McDonnell Douglas* framework whether grounded in religious discrimination or sex discrimination— and irrespective of an individual court's iteration of the elements of a *prima facie* case. *See* 42 U.S.C. § 2000e-2. And courts in this circuit facing Title VII religious discrimination claims—that is, the same claim brought by the *Bynum* plaintiff—have deployed a *prima facie* analysis similar to that used here. *See Edwards v. Creoks Mental Health Servs., Inc.*, 505 F. Supp. 2d 1080, 1090 (N.D. Okla. 2007) ("[T]he appropriate prima facie case for plaintiff's religious discrimination claim requires a showing that: (1) plaintiff is a member of a protected class; (2) she was qualified to perform her job; (3) despite her qualifications, she was discharged; and (4) the job from which she was terminated was not eliminated." (citing *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999))). Given the compelling factual similarities between Plaintiff's circumstances and those of the *Bynum* plaintiff, Plaintiff's elemental argument is unconvincing.

To make this argument, Plaintiff relies on *MacDonald v. Eastern Wyoming Mental Health Center*, a Tenth Circuit decision holding that a plaintiff may meet the qualification element of her *prima facie* case "by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time." *MacDonald*, 941 F.2d 1115, 1121 (10th Cir. 1991) (internal quotations omitted), *abrogated on other grounds by Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995). Leaning on this passage's disjunctive phrasing, Plaintiff asserts "the Court can assume [she] can establish the third element of a prima facie case[] . . . by virtue of the amount of time" she worked for Defendant. Doc. 24, at 22; *see also Bolton v. Sprint/United Mgmt. Co.*, 220 F. App'x 761, 767 (10th Cir. 2007) (holding that, "[b]ecause the *MacDonald* test is phrased in the disjunctive," eight- and sixteen-year periods of employment "alone [were] sufficient to establish the [qualification] element of the prima facie test").

*MacDonald*'s language is admittedly broad—though perhaps not broad enough to support Plaintiff's argument. Plaintiff worked for Defendant from September 9, 2015, until her termination on February 6, 2017—that is, for less than a year and a half. *See* Doc. 24, at 22; Doc. 24-4; Doc. 24-12. Plaintiff cites no authority showing that employment of that length counts as "substantial" under *MacDonald*'s terms. Indeed, the *MacDonald* plaintiffs, who were found to be qualified by the Tenth Circuit, worked for their employer for four years—more than double the length of time Plaintiff worked for Defendant. *See*

*MacDonald*, 941 F.2d at 1121.[5] Thus, the Court finds it extremely unlikely that the length of Plaintiff's employment, standing alone, satisfies the qualifications element of her *prima facie* case.[6]

But regardless of whether Plaintiff's employment with Defendant is "substantial" under *MacDonald*, the Court does not read *MacDonald*'s language so broadly as to allow Plaintiff to establish a *prima facie* case despite her lack of an objective qualification—FAA certification—necessary to her former position. Unlike Plaintiff, the *MacDonald* plaintiffs still possessed their objective qualifications at the time of their termination; thus, the Tenth Circuit was not faced with the question presented here: can Plaintiff fulfill the qualification element of her *prima facie* case through length of employment or positive assessment of work performance, even though she lacks a necessary and objective employment criterion? *See MacDonald*, 941 F.2d at 1121 ("[Plaintiffs] clearly have met [their *prima facie*] burden here. Both of them continued to possess the objective professional qualifications they held when they were hired.").

Moreover, *MacDonald* was chiefly concerned with whether a defendant may defeat a plaintiff's *prima facie* case by arguing that the plaintiff's work was unsatisfactory—that is, whether a defendant might defeat a *prima facie* case by simply deploying the same non-discriminatory rationale for its termination decision that it proffers at step two of the

---

[5] Despite Plaintiff's urging, the Court will not tack on Plaintiff's employment with a "previous contractor, Independent Solutions for Government," to her employment with Defendant in order to create a longer employment period. *See* Doc. 24, at 22.

[6] On her reading of *MacDonald*, Plaintiff could also proffer her own, positive assessment of her work performance to meet the qualification prong of the *prima facie* case. But Plaintiff has not done this, and while the Court might assume Plaintiff believes she was a satisfactory employee, it will not fashion an argument for her. The *prima facie* burden borne by Plaintiff may be light, but it is a burden nonetheless.

*McDonnell Douglas* framework. *Id.* at 1119. The *MacDonald* court found error in the district court's decision to give "dispositive weight to its conclusion that the [plaintiffs] failed to disprove defendants' reasons for discharge." *Id.* "[C]oncluding that the [plaintiffs] did not establish a prima facie case based on the reasons for their discharge," held the circuit, "raise[d] serious problems under the *McDonnell Douglas* analysis, which mandates a full and fair opportunity for a plaintiff to demonstrate pretext." *Id.*; *see also Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) ("In analyzing Plaintiff's prima facie case, it is important not to conflate their claim of discrimination with Defendants' proffered explanation."); *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193 ("[A] defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual.").

Here Defendant is neither arguing that Plaintiff is unqualified because she performed unsatisfactorily nor striving to defeat Plaintiff's *prima facie* case through its proffered, non-discriminatory reason for terminating her. Rather, Defendant is arguing that Plaintiff, even if she performed satisfactorily and even if she worked for Defendant for a "substantial period of time," lacked an objective qualification required by her position when she was terminated—and Plaintiff lost that objective qualification because of decisions made by the FAA, not the Defendant. The situation in *MacDonald*—employer-defendants seeking to defeat plaintiffs' *prima facie* cases by asserting that their work was unsatisfactory—is distinguishable from the facts at hand, where Plaintiff needed an FAA certification to hold her position with Defendant and lost it prior to her termination.

At any rate, *MacDonald*, as this Court reads it, does not empower Plaintiff to evade her decertified status merely by asserting that she performed satisfactory work or was employed by Defendant for a substantial period. *MacDonald*'s factual circumstances do not indicate that the Tenth Circuit intended to obviate the importance of an objective job qualification altogether. *See MacDonald*, 941 F.2d at 1119–20 ("'[A] plaintiff challenging his termination . . . can ordinarily establish a prima facie case of . . . discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.' . . . [T]his showing would be satisfied if the 'plaintiff had not suffered . . . loss of a necessary professional license . . . that rendered him unfit for the position for which he was hired.'" (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 & n.3 (5th Cir. 1988))); *see also Merritt v. Tellabs Operations, Inc.*, No. CIVA04CV01565EWNPAC, 2006 WL 894898, at *6 (D. Colo. Mar. 31, 2006) ("Here, Plaintiff continued to possess the objective qualifications he held when he was hired. . . . *MacDonald* adopted the standard set forth in *Bienkowski v. Am. Airlines, Inc.* . . . in evaluating this factor."), *aff'd*, 222 F. App'x 679 (10th Cir. 2007); *cf. Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1273–74 (10th Cir. 2006) ("We have traditionally distinguished between employment decisions based on objective criteria, which are generally immune to employer manipulation, and those based on subjective criteria, which are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination. Under this dichotomy, a plaintiff who cannot meet objective hiring or promotion criteria cannot establish a prima facie case of discrimination, and the employer is entitled to judgment as a matter of law." (internal quotation marks and

citations omitted)). And such an expansive reading of *MacDonald* would seem inconsistent with the purpose of *McDonnell Douglas*' *prima facie* burden: eliminating the possibility that Plaintiff was terminated based on a lack of qualification. *See Fassbender*, 890 F.3d at 884 (noting that the purpose of the *prima facie* case is to "exclude 'the two most common legitimate reasons for termination, i.e., lack of qualification or the elimination of the job'" (quoting *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999))); *cf. Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193 ("The relevant inquiry at the prima facie stage is not whether an employee . . . is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications *necessary to perform the job* . . . ." (emphasis original)). It is precisely this common and legitimate reason—lack of a necessary, objective job qualification—that Plaintiff cannot exclude as a basis for her termination. Accordingly, as the FAA decertified Plaintiff prior to her termination, she cannot establish a *prima facie* case of sex discrimination. Therefore, Defendant is entitled to summary judgment.

### (B)    Pretext

Even assuming Plaintiff could establish a *prima facie* case of sex discrimination, Defendant is still entitled to summary judgment because Plaintiff cannot show that Defendant's proffered rationale for firing her is pretextual. Once a *prima facie* case is established, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant has satisfied its light burden: "[d]ue to the multiple, credible student complaints of unwelcomed harassment and fraternization against [Plaintiff], which violated both SAIC and FAA rules and . . . resulted in [Plaintiff's]

decertification by the FAA," Defendant terminated Plaintiff. Doc. 23, at 18–19. As Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, the presumption of discrimination raised by a *prima facie* case "simply drops out of the picture," and Plaintiff "carries the full burden of persuasion" to show that Defendant terminated her based on her sex. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation marks and citations omitted).

"A plaintiff may show pretext by demonstrating the 'proffered reason [for termination] is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013)). "A plaintiff may also show pretext by demonstrating 'the defendant acted contrary to a written company policy,' an unwritten company policy, or a company practice 'when making the adverse employment decision affecting the plaintiff.'" *Id.* (quoting *Kendrick*, 220 F.3d at 1227). Additionally, Plaintiff might show pretext through differential treatment—that is, by demonstrating that Defendant treated Plaintiff "differently from other similarly-situated employees who violated work rules of comparable seriousness . . . ." *Swackhammer*, 493 F.3d at 1167–68 (internal quotation marks and citation omitted).[7]

"Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Bekkem*, 915 F.3d

---

[7] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (internal quotation marks and citations omitted). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Id.*

at 1268 (internal quotation marks and citation omitted).[8] Moreover, the Court "may not second guess the business judgment of the employer." *DePaula*, 859 F.3d at 970 (internal quotation marks and citations omitted). The Court does not ask whether Defendant's reasons for terminating Plaintiff "were wise, fair[,] or correct," but rather whether Defendant "honestly believed those reasons and acted in good faith upon those beliefs." *Id.* at 971 (internal quotation marks and citation omitted); *see also Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) ("To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. . . . [S]he must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. . . . Title VII [does not] license [the Court] . . . to act as a 'super personnel department' to undo bad employment decisions . . . ."). In assessing pretext, the Court "examine[s] the facts as they appear to the person making the

---

[8] Indeed, a defendant may be entitled to summary judgment even where a plaintiff makes some showing of pretext, but that showing is weak:

> [I]t is not always permissible for the factfinder to infer discrimination from evidence that the employer's explanation is unworthy of belief. If the record conclusively revealed some other, nondiscriminatory reason for the employer's adverse employment decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred, the fact that the employer's explanation was unworthy of belief would no longer be sufficient to create an inference of discrimination. The same reasoning applies to a plaintiff's attempts to show pretext through evidence of differential treatment; if the employer's differential treatment of similarly-situated employees is trivial or accidental or explained by a nondiscriminatory motive, such treatment is insufficient to create an inference of discrimination.

*Swackhammer*, 493 F.3d at 1168 (internal quotation marks, citations, brackets, and emphasis omitted).

decision, and do[es] not look to . . . [P]laintiff's subjective evaluation of the situation."
*DePaula*, 859 F.3d at 971 (internal quotation marks, citation, and emphasis omitted).

Plaintiff attempts to show pretext in several ways, alleging that Defendant (1) states a false reason for terminating Plaintiff, (2) failed to conduct a fair hearing, (3) has shifted rationales for firing Plaintiff, and (4) treated Plaintiff differently than similarly-situated male employees. *See* Doc. 24, at 23–28. But Plaintiff's allegations do not establish that Defendant's proffered reason for terminating Plaintiff is pretextual.

First, Plaintiff's falsity argument is unconvincing and unsupported by the record. Plaintiff's termination letter states that she was terminated for violating SAIC's Code of Conduct, "[a]s discussed." Doc. 24-4. Plaintiff asserts that she never discussed the reasons for her termination with Defendant and that, therefore, this portion of the letter should be considered false. *See* Doc. 24, at 23. In support of this contention, Plaintiff cites an affidavit, attached as Exhibit 8 to her response brief, in which she claims Defendant "never gave [her] the opportunity to give [her] version of events." Doc. 24-8, at 1. To the extent the Court even considers this self-serving affidavit,[9] whether Defendant solicited Plaintiff's version of events does not speak to the issue of whether Defendant's proffered rationale for termination—that it received multiple student comments accusing Plaintiff of misconduct violative of Defendant's code of conduct and believed them—is false. Moreover, Plaintiff's deposition testimony directly contradicts this bare assertion: Plaintiff

---

[9] *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("Affidavits must contain certain indicia of reliability. . . . We do not consider conclusory and self-serving affidavits." (internal quotation marks and citations omitted); *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment.").

testified that the student comments, irrespective of their factual accuracy, alleged conduct that violated Defendant's policies and could warrant her termination *and* that Defendant aggressively sought out a statement from Plaintiff responding to the comments. *See* Doc. 23-2, at 12–13, 15, 22. In light of the record, the Court cannot see how "[a]s discussed" being included in Plaintiff's termination letter renders Defendant's stated reason for termination a sham.

Plaintiff also cites documentation submitted to the Oklahoma Employment Security Commission ("OESC") by TALX, Defendant's third-party vendor handling unemployment claims, when Plaintiff applied for unemployment. *See* Doc. 24, at 23–24; *see also* Doc. 23, at 12–13; Doc. 23-17; Doc. 24-5. In these documents, a claims consultant noted that Plaintiff "violate[d] the rules of the Customer"—the "Customer" being the FAA—but "did not violate the SAIC Code of Conduct." Doc. 23-17. Plaintiff seizes on this statement as showing that Defendant's termination rationale is false. Whatever inconsistencies there may be between the termination letter and the TALX documents, Plaintiff does not allege that TALX was involved in the decision to terminate her. Thus, these isolated statements from a third party are insufficient to show that the Defendant's decision to terminate Plaintiff was motivated by a discriminatory purpose. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions. [Plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and [Defendant's] decision to terminate her."); *see also Mitchell v. City of Wichita, Kan.*, 140 F. App'x 767, 778–79 (10th Cir. 2005) ("Evidence

demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." (internal quotation marks and citations omitted)).

Second, Plaintiff argues that Defendant failed to conduct a fair investigation, and that this failure raises an inference of pretext. Doc. 24, at 24–25 (citing *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014)). But Plaintiff offers no evidence calling into question the fairness of Defendant's investigation or decision-making process. Indeed, despite Plaintiff's assertions to the contrary, the record reflects that Defendant received numerous student comments solicited by the FAA accusing Plaintiff in specific terms of violating Defendant's and the FAA's codes of conduct. *Compare id*. *with* Doc. 24-1, 24-3; *see also* Doc. 23-5–23-8. That Plaintiff did not receive notice regarding some of these comments does not somehow render the entire process suspect. *See Adamson*, 514 F.3d at 1153 ("As at-will employees, [plaintiffs] were not entitled to an explanation . . . for their terminations."). Absent some showing of procedural irregularity or general unfairness, Plaintiff cannot establish pretext by citing the FAA's and Defendant's investigations.

Third, Plaintiff asserts that Defendant has offered inconsistent explanations for why she was terminated from her position. Doc. 24, at 25. As Plaintiff notes, her termination letter stated that she was being terminated for violating SAIC's Code of Conduct. *Id*. (citing Doc. 24-4). Plaintiff juxtaposes this reason against a statement in the TALX documents contradicting the termination letter's rationale and Defendant's argument in its motion for summary judgment that, in addition to violating the SAIC code of conduct, Plaintiff also

was decertified by the FAA and thereby rendered ineligible for her instructor position. *Id*. (citing Doc. 23, at 18–19; Doc. 24-5). The Court has addressed the TALX documents above—as TALX was not a decision-maker and played no role in Defendant's decision to terminate Plaintiff's employment, documents relating to its administration of Plaintiff's unemployment claim fail to show how Defendant has shifted rationales for its termination decision. And as for Defendant's argument about Plaintiff's decertification, the argument primarily targets whether Plaintiff is able to make out a *prima facie* case. *See supra* Section III(A). Defendant has been consistent in explaining why it fired Plaintiff, and Plaintiff fails to cite record evidence to the contrary. Thus, Plaintiff cannot show pretext through inconsistencies in Defendant's rationale for terminating her employment.

Finally, Plaintiff argues that Defendant has treated similarly-situated male employees more favorably that Plaintiff. Specifically, Plaintiff cites Larry Moore, William "Clay" Leak, and Tim Robertson as male instructors who were not terminated for conduct similar to the conduct of which Plaintiff was accused. *See* Doc. 24, at 10–11, 14–18, 26–28.[10] But differences abound between Plaintiff and the three male employees she has cited. Most salient among these differences is the fact that the FAA did not decertify any of the male employees Plaintiff seeks to use as comparators; all retained their certifications

---

[10] Plaintiff also cites two additional male instructors, Bobby Brooks and Andy Papageorge, as comparators. *See* Doc. 24, at 14–15. Plaintiff alleges that she heard Mr. Papageorge refer to a female student as "baby doll." *Id*. at 14. She further alleges that Mr. Brooks fraternizes with students outside of work and that SAIC is "well aware" of his conduct. *Id*. Plaintiff cites no evidence corroborating these allegations, beyond her self-serving affidavit. *See id*.; Doc. 24-8. Defendant asserts that it has no records of any complaints lodged against Messrs. Papageorge and Brooks. *See* Doc. 23, at 13–14. Given the dearth of evidence presented regarding these two men, the Court cannot fairly consider them as comparators. Therefore, the Court disregards Plaintiff's unsupported allegations against Messrs. Papageorge and Brooks in its pretext analysis.

despite being disciplined for misconduct. This fact alone is enough to find that the male employees cited were not similarly situated to Plaintiff.

The individual circumstances of each alleged comparator also show that Plaintiff was not similarly situated to any of them. First, while Mr. Moore received written discipline from Defendant after a student complained to the FAA about a comment he made to her regarding her sexual orientation, this was his first instance of misconduct. Doc. 23, at 14, 22; Doc. 24, at 10, 15–16; *see also* Doc. 23-19; Doc. 24-7. The events prompting Plaintiff's termination, on the other hand, were not Plaintiff's first instance of misconduct. *See supra* Section I. Second, Mr. Leak was accused by an FAA contractor, not a student, of making comments that insinuated she was an escort or stripper; once the FAA forwarded these comments to Defendant, it investigated, but was unable to corroborate them. Doc. 23, at 14; Doc. 24, at 16–17; *see also* Doc. 23-20. Unlike Mr. Leak, Plaintiff allegedly made comments to students, rather than contractors with the FAA. *See supra* Section I. Moreover, Defendant was able to corroborate the comments Plaintiff made to students— and, in Plaintiff's case, there were numerous allegations from several students, rather than one isolated incident. *Id.* Thus, neither Mr. Moore nor Mr. Leak aid Plaintiff in showing that Defendant's non-discriminatory rationale for terminating her is pretextual.

Finally, Defendant's treatment of Mr. Robertson, arguably the most similarly-situated to Plaintiff of the three men, does not support a finding of pretext. Mr. Robertson was accused of unwanted physical contact by two female students. Doc. 23, at 14–15; Doc. 24, at 17–18; Doc. 24-6, at 16. The students complained to the FAA, which alerted Defendant; Defendant then commenced an investigation, but Mr. Robertson resigned his

employment on July 14, 2017, before any action was taken. *Id*. Plaintiff argues that Defendant's failure to fire Mr. Robertson demonstrates that it treated a male employee similarly situated to Plaintiff differently because of his sex. *See* Doc. 24, at 26–27. But the circumstances surrounding the end of Mr. Robertson's employment with Defendant are less damning that Plaintiff argues. Up until Mr. Robertson resigned, Defendant treated him similarly to Plaintiff—while he was not sent home on paid leave like Plaintiff, he was asked to have no contact with his class and the students he allegedly harassed while Defendant investigated the accusations against him. *See* Doc. 24, at 18; Doc. 24-6. Additionally, Mr. Robertson's resignation prior to termination is not indicative of more favorable treatment from Defendant—especially because Defendant insists it was going to fire him on July 14, 2017, anyway. *See* Doc. 23, at 14–15; Doc. 23-21. Indeed, Defendant has attached a drafted termination letter for Mr. Robertson to its motion for summary judgment—which is dated "July 14, 2017," the day he resigned—that is virtually identical to the termination letter Plaintiff received. *See* Doc. 23-21, at 2.[11] Thus, to the extent Mr. Robertson and Plaintiff were similarly situated, Plaintiff has not shown that Defendant treated Mr. Robertson more favorably than it treated her.

Accordingly, even if Plaintiff could establish a *prima facie* case, Plaintiff has failed to establish that Defendant's non-discriminatory rationale for terminating her is pretextual. Thus, Defendant is entitled to summary judgment.

---

[11] Plaintiff insists the termination letter referencing Mr. Robertson is neither signed nor dated, which is only half true—the date is clearly marked at the top of the page. *See id*; *see also* Doc. 24, at 18. Plaintiff offers nothing, beyond her own incredulity, to cast doubt on Defendant's supposition, supported by the record, that the letter was drafted before (or at least contemporaneously with) Mr. Robertson's resignation. *See* Doc. 23, at 15 n.1; *see also* Doc. 23-18, at 4.

IV.    **Conclusion**

Defendant has presented compelling evidence that a months-long pattern of misconduct, culminating in January 2017, led to Plaintiff's termination. In contesting Defendant's argument and insisting that her termination stems from sex discrimination, Plaintiff falters at the starting gate and never recovers. She is unable to overcome her lack of qualification—a result of the FAA's decision to decertify her following student comments and interviews—and, thus, cannot make out a *prima facie* case of discriminatory discharge. But even if she could establish a *prima facie* case, Plaintiff has offered no evidence showing that Defendant's stated reason for firing her is pretextual.

Accordingly, as Plaintiff has failed to carry her burden at every step, the Court GRANTS summary judgment to Defendant.

IT IS SO ORDERED this 1st day of April, 2019.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**